UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| KEVIN WEBER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL ADVISORS TRUST COMPANY, NATIONAL ADVISORS TRUST OF SOUTH DAKOTA INC., AND NAH SIDECAR I, LLC d/b/a NATIONAL ADVISORS CONCIERGE SERVICES, all d/b/a NATIONAL ADVISORS TRUST,<br><br>Defendants. | Case No. 4:24-cv-00162-FJG |

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND SUGGESTIONS IN SUPPORT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff, Kevin Weber, by counsel, under Federal Rule of Civil Procedure 23(e)(1), hereby moves the Court for entry of an Order:

1. Preliminarily approving the class action Settlement Agreement and Release reached between Plaintiff and all Defendants, attached as Exhibit 1 to the Declaration of Lynn A. Toops in Support of Unopposed Motion for Preliminary Approval (the "Settlement");

2. Certifying the class for settlement purposes and appointing Class Counsel and the Class Representative;

3. Approving the proposed notice plan and deadlines for class members to object to, or opt-out of, the proposed Settlement as set forth in this table of proposed deadlines:

## PROPOSED APPROVAL TIMELINE

| Event | Time for Compliance |
|---|---|
| Deadline for Settlement Administrator to Send Notice to Class Members | 30 days after entry of the Preliminary Approval Order |
| Deadline for Class Counsel to File Motion for Approval of Attorneys' Fees, Expenses, and Service Award | 14 days before the Deadline for Class Members to Object |
| Deadline for Class Members to Object | 60 days after notice is first sent |
| Deadline to Opt-Out as a Class Member | 60 days after notice is first sent |
| Deadline for Motion for Final Approval | 75 days after notice is first sent |
| Final Approval Hearing | To be set at a time that is convenient for the Court, approximately 120 days after entry of the Preliminary Approval Order |

This motion is made on the grounds that the Settlement is the product of arms'-length negotiations by informed counsel and is a fair, reasonable, and adequate compromise of the claims brought in this case. Class Counsel met and conferred with counsel for Defendant about this motion, and Defendant does not oppose the motion.

**TABLE OF CONTENTS**

Introduction ........................................................................................................................... 1

Statement of Facts ................................................................................................................ 1

    I.   Litigation and mediation. ........................................................................................ 1

    II.  Settlement terms. .................................................................................................... 2

        A.  Agreed certification of the Settlement Class. ................................................ 2

        B.  Non-reversionary $650,000 Settlement Fund to provide benefits to Class Members and business practice enhancements. ......................................... 3

        C.  Notice to Class Members. .............................................................................. 3

        D.  Attorneys' Fees, Expenses, and Service Award. ........................................... 4

SUGGESTIONS IN SUPPORT OF GRANTING THE MOTION

    I.   The Court should grant preliminary approval under Federal Rule of Civil Procedure 23(e)(1) because the Court "will likely be able to" grant final approval and "will likely be able to" certify a class for judgment on the Settlement. ..................................... 4

        A.  The Court "will likely be able to" grant final approval because the four *Van Horn* factors and the additional Federal Rule of Civil Procedure 23(e)(2) factors all support that the Settlement is well within the range of a fair, reasonable, and adequate compromise. ............................................................................................. 5

            1.  The *Van Horn* factors support preliminary approval. ........................... 6

            2.  The Rule 23(e)(2) factors also support preliminary approval. ................ 7

        B.  The Court "will likely be able to" certify a class for purposes of judgment on the Settlement because the class meets the certification requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3). .............................................. 9

    II.  The Court should approve and direct notice to the class, set deadlines for class members to opt-out or object, and set a date for a final approval hearing. ...................... 11

Conclusion ......................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 15250 (8th Cir. 1996) .................................................. 10

*Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763 (8th Cir. 1971) ...................................................... 10

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988),
 *aff'd,* 899 F.2d 21 (11th Cir. 1990) ................................................................................................ 6

*Carpe v. Aquila, Inc.*, 224 F.R.D. 454 (W.D. Mo. 2004) ................................................................11

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................................... 6

*FultonGreen v. Accolade, Inc.*,
 No. 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ......................................................... 7

*Hand v. Beach Entm't KC, LLC*,
 No. 4:18-CV-00668-NKL, 2020 WL 3163672 (W.D. Mo. Apr. 27, 2020) ..........................10, 11

*Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621 (S.D. Iowa 2016) .................................................. 5, 6

*In re Pre-Filled Propane Tank Antitrust Litig.*,
 No. 14-02567-MD-W-GAF, 2019 WL 7160380 (W.D. Mo. Nov. 18, 2019) ........................ 5, 9

*In re Uponor, Inc.*, 716 F.3d 1057 (8th Cir. 2013) ......................................................................... 5

*In re Wireless Tel Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) .......................... 6

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371 (8th Cir. 1990) .... 5

*Luiken v. Domino's Pizza, LLC*, 705 F.3d 370 (8th Cir. 2013) ...................................................... 10

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015) .............................................. 6, 7

*Petrovic v. Amoco Oil Co.*, 200 F.3d 11408 (8th Cir. 1999) ........................................................... 5

*Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030 (8th Cir. 2018) ................................................... 10

*Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371 (8th Cir. 2018) .............................................11

*Swinton v. SquareTrade, Inc.*,
 No. 4:18-CV-00144-SMR-SBJ, 2020 WL 1862470 (S.D. Iowa Apr. 14, 2020) ........................ 5

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) ................................................................ 5, 6, 8

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................... 10

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................................... 9, 10

Fed. R. Civ. P. 23(b) ................................................................................................................9, 11

Fed. R. Civ. P. 23(c) ..................................................................................................................... 12

Fed. R. Civ. P. 23(e) ................................................................................................... 4, 5, 8, 9

## INTRODUCTION

The proposed Settlement before the Court resolves the claims in this case, in which Plaintiff alleges that approximately 14,118 individuals had their personally identifiable information ("PII") exposed to unauthorized parties in a data breach (the "Data Security Incident"). Under the Settlement, Defendants will pay $650,000 (over $46 per Class Member) into a non-reversionary Settlement Fund and will implement enhancements to their data security systems. The Net Settlement Fund will be used to: (a) pay claims by Class Members for documented monetary losses related to the Data Security Incident, up to $5,000 per claim; (b) provide three years of credit monitoring services; and (c) make pro rata distributions to Class Members without the need to show any proof of loss. The Settlement was reached after mediation with a third-party neutral and arms'-length negotiation by experienced counsel, and it represents a fair, reasonable, adequate compromise. The Court should, therefore, grant preliminary approval so that notice can be issued to Class Members and a final approval hearing can be scheduled to determine whether the Settlement should become final and effective, resolving this litigation by agreement.

## STATEMENT OF FACTS

### I. Litigation and mediation.

National Advisors Trust Company is a national trust bank regulated by the Office of the Comptroller of the Currency of the United States. National Advisors Trust of South Dakota, Inc. is a South Dakota chartered trust company regulated by the Division of Banking of the State of South Dakota. They provide trust administration and custody services to trust advisers and the families they serve. NAH Sidecar I, LLC is a Delaware limited liability company that provides concierge services, such as special asset pricing, to the same trust advisers and the families they serve. All three entities are wholly owned subsidiaries of National Advisors Holdings, Inc., a

1

Delaware corporation. All the Defendants are collectively referred to as "National Advisors."

On February 2, 2024, National Advisors notified its customers and their clients that National Advisors discovered suspicious activity related to a certain employee's email account and certain files stored within the impacted email account may have been accessed by an unauthorized party between February 2023 and April 2023. National Advisors also informed these individuals that their personal identifiable information ("PII") may have been contained within the impacted files (the "Data Security Incident"). On March 6, 2024, Plaintiff filed a Class Action asserting claims against Defendants related to the Data Security Incident for (1) Negligence; (2) Negligence Per Se; (3) Breach of Contract; (4) Unjust Enrichment; and (5) Breach of Fiduciary Duty.

On July 19, 2024, counsel for the parties mediated this matter before the Honorable Charles Atwell (Ret.) of Jay Daugherty Mediation & Arbitration. Declaration of Lynn A. Toops in Support of Unopposed Motion for Preliminary Approval ("Toops Decl.") ¶ 4. Although the parties did not reach a resolution at the mediation, they continued settlement discussions for over two months. *Id.* In October 2024, the Parties were able to reach an agreement in principle following back-and-forth negotiations and advocacy by counsel on behalf of the parties. *Id.* The parties then negotiated the full, detailed Settlement that is now before the Court for approval. *Id.*

II. **Settlement terms.**

    A. **Agreed certification of the Settlement Class.**

Under the Settlement, the parties agree to the certification of the following Settlement Class:

> All individuals within the United States of America whose PII was exposed to unauthorized third parties as a result of Defendants' data security incident that occurred between February 2023 and April 2023. Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct families; (2) the Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a

2

controlling interest, and their current or former officers and directors; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

Settlement ¶¶ 39, 83.

### B. Non-reversionary $650,000 Settlement Fund to provide benefits to Class Members and business practice enhancements.

Under the Settlement, Defendants will pay $650,000 into a non-reversionary Settlement Fund. Settlement ¶¶ 41, 51. The Net Settlement Fund will be used to provide several different benefits. First, Class Members can make a claim for reimbursement of documented monetary losses up to $5,000 per Class Member. *Id.* ¶ 59.i. Documented monetary losses include things such as unreimbursed losses arising from identity fraud and fees to freeze or repair credit because of the Data Security Incident. *Id.* Second, Class Members can make a claim for three years of credit monitoring. *Id.* ¶ 59.ii. Third, Class Members can make a claim for a cash payment, which will be a pro rata payment of the Net Settlement Fund remaining after providing the other benefits. *Id.* ¶ 59.iii. If any funds are unclaimed, they will not revert to Defendants but will be paid to a *cy pres* recipient. *Id.* ¶¶ 22, 36, 59.iii.

In addition to the cash benefits, Defendants have undertaken or will undertake steps to improve data security, at Defendants' own expenses. *Id.* ¶¶ 59.iv., 75.

### C. Notice to Class Members.

The Settlement includes proposed short form and long form notices to the class members that inform them of the terms of the Settlement and their rights to object to, or opt-out of, the Settlement, or to make a claim for benefits. Settlement Exs. B & C. A website and telephone number will also be established to provide class members with additional information relating to the Settlement. *Id.* ¶ 80. The Settlement Administrator will provide the notice, and the costs will be paid from the Settlement Fund. *Id.* ¶ 69.

### D. Attorneys' Fees, Expenses, and Service Award.

Before the deadline for Class Members to object, Class Counsel will file a motion with the Court requesting to be paid up to one-third of the Settlement Fund as attorneys' fees, in addition to any litigation expenses that have not been reimbursed. *Id.* ¶ 99. Class Counsel will also file a motion requesting that the Court approve a payment of a service award of $2,500 to the Class Representative, in recognition of his efforts in this case that have resulted in a benefit to thousands of others. *Id.* ¶ 97. Each of the requests for fees, expenses, and a service award is subject to Court approval as part of final approval, and the Settlement is not contingent on the Court awarding any specific amounts. *Id.* ¶¶ 98, 100.

## SUGGESTIONS IN SUPPORT OF GRANTING THE MOTION

Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements. In general, the approval process involves three stages: (1) notice of the settlement to the class after "preliminary approval" by the court; (2) an opportunity for class members to opt out of, or object to, the proposed settlement; and (3) a subsequent hearing at which the court grants "final approval" upon finding that the settlement is "fair, reasonable, and adequate," after which judgment is entered, class members receive the benefits of the settlement, and the defendant receives the benefit of the settlement's release. Fed. R. Civ. P. 23(e)(1)–(2), (4)–(5).

**I. The Court should grant preliminary approval under Federal Rule of Civil Procedure 23(e)(1) because the Court "will likely be able to" grant final approval and "will likely be able to" certify a class for judgment on the Settlement.**

We are currently at the "preliminary approval" stage. In deciding whether to grant "preliminary approval" to a proposed settlement, the Court evaluates two issues: (1) whether "the court will likely be able to" grant final approval to the settlement as a fair, reasonable, and adequate compromise; and (2) whether "the court will likely be able to" certify the class for purposes of entering judgment on the settlement. Fed. R. Civ. P. 23(e)(1)(B). Here, the answer to both inquiries

4

is a clear "yes," and the Court should grant preliminary approval.

> A. **The Court "will likely be able to" grant final approval because the four *Van Horn* factors and the additional Federal Rule of Civil Procedure 23(e)(2) factors all support that the Settlement is well within the range of a fair, reasonable, and adequate compromise.**

First, the Court "will likely be able to" grant final approval because under the relevant factors set forth in Rule 23(e)(2) and by the Eighth Circuit, the Settlement is well within the range of a fair, reasonable, and adequate compromise.

In the Eighth Circuit, courts use four factors, commonly known as the *Van Horn* factors, along with additional factors recently codified in the 2018 amendment to Federal Rule of Civil Procedure 23(e)(2), to evaluate whether the court "will likely be able to" grant final approval to a settlement as being "fair, reasonable, and adequate." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988); *Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144-SMR-SBJ, 2020 WL 1862470, at *5 (S.D. Iowa Apr. 14, 2020) (holding that it is "appropriate for the Court to consider the Rule 23(e)(2) factors along with the *Van Horn* Factors."); *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 7160380, at *1 (W.D. Mo. Nov. 18, 2019). In making the fairness determination, a court must be mindful that "[s]ettlement agreements are generally encouraged, and are presumptively valid." *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 626 (S.D. Iowa 2016) (citing *In re Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). "A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990)). This presumption is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005). And the presumption is even stronger where the settlement is the product of arm's-

5

length negotiations facilitated by a mediator. *Huyer*, 314 F.R.D. at 626. The "guiding principle" is that "a class action settlement is a private contract negotiated between the parties" and thus the Court's review is limited to ensuring "that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015) (quoting *In re Wireless Tel Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005)). A court's decision on the fairness of a class action settlement will be affirmed absent a clear abuse of discretion. *Van Horn*, 840 F.2d at 607.

### 1. The *Van Horn* factors support preliminary approval.

The four *Van Horn* factors are: (1) the merits of the plaintiffs' case weighed against the terms of the settlement; (2) the defendants' financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Id.* Each of these factors supports preliminary approval.

As to the first *Van Horn* factor, the terms of the Settlement weigh strongly compared with the merits of the claims. Toops Decl. ¶ 7. So long as "[t]he settlement fund ensures that class members will receive an adequate percentage of their damages and mitigates the risk inherent in taking these legal claims to trial," the first *Van Horn* factor "weighs strongly in favor of approving the settlement and finding it to be fair and reasonable." *Huyer*, 314 F.R.D. at 627. Courts have found that settlements that provide as little as 10% or less of potential damages provide an "adequate percentage" recovery under this factor. *See, e.g.*, *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542–43 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990) (approving settlement equal to 3 to 5% of the per share recovery sought by plaintiffs and observing that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate" and that "[a] settlement can be satisfying even if it amounts to

a hundredth or even a thousandth of a single percent of the potential recovery."). Here, the Settlement provides a non-reversionary Settlement Fund of $650,000, which amounts to more than $44 per Class Member, a significant recovery. Toops Decl. ¶ 7. And weighed against that recovery, Plaintiff faced significant risks in prevailing on the claims through class certification, trial, and appeal. *Id.* As courts have recognized, data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare." *FultonGreen v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019). Thus, the terms of the Settlement weigh favorably against the risks of prevailing on the merits.

As to the second *Van Horn* factor, Defendants' financial condition was not an issue, and therefore Plaintiff did not need to accept a reduced settlement amount. When, as here, a defendant is financially sound and able to pay more or continue with litigation, the Eighth Circuit recognizes that such a circumstance is merely "neutral" to the fairness analysis. *Marshall*, 787 F.3d 502, 512 (8th Cir. 2015) (fact that the NFL could afford to pay more was only "neutral").

As to the third *Van Horn* factor, courts note that "[c]lass actions, in general, place an enormous burden of costs and expense upon [ ] parties," which favors approval. *Id.* (internal quotations and citation omitted). Here, that is undoubtedly true, as continued litigation would have involved significant expert and discovery expense, along with the delays and costs of adversarial class certification, trial, and appeal, which favors preliminary approval. Toops Decl. ¶ 7.

Finally, as to the fourth *Van Horn* factor, there is no current opposition to the Settlement, as all parties have agreed to it. This factor is, therefore, appropriately addressed at final approval—after the class has received notice and an opportunity to object.

    **2.    The Rule 23(e)(2) factors also support preliminary approval.**

In addition to the *Van Horn* factors, the Federal Rule of Civil Procedure 23(e)(2) factors

7

support preliminary approval. Those factors are whether:

    (A)    the class representatives and class counsel have adequately represented the class;
    (B)    the proposal was negotiated at arm's length;
    (C)    the relief provided for the class is adequate, taking into account:
        (i)    the costs, risks, and delay of trial and appeal;
        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
        (iv)    any agreement required to be identified under Rule 23(e)(3); and
    (D)    the proposal treats class members equitably relative to each other.

No one factor is determinative, but the "most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Van Horn*, 840 F.2d at 607. Here, each factor supports approval.

Rule 23(e)(2)(A) supports approval because the class representative and class counsel have adequately represented the class by investigating and vigorously pursuing the claims in this case and by convincing the Defendant to agree to pay $650,000.00, which is a substantial recovery. Toops Decl. ¶¶ 5, 7.

Rule 23(e)(2)(B) supports approval because the Settlement was negotiated at arm's length and through the use of a neutral mediator. Toops Decl. ¶ 4.

Rule 23(e)(2)(C) supports approval for several reasons. First, the substantial relief provided at the same time eliminates the costs and delays of litigation and eliminates the risk that the class could have suffered a defeat on a motion to dismiss, summary judgment, class certification, trial, or appeal. Fed. R. Civ. P. 23(e)(2)(C)(i); Toops Decl. ¶ 7. Second, the method of distributing the relief to the classes is efficient as Class Members can make claims for monetary losses with relevant documents and for credit monitoring and a cash payment with no need to submit any proof of loss whatsoever. Fed. R. Civ. P. 23(e)(2)(C)(ii). Third, the requested fees are subject to Court

8

approval, are typical of amounts routinely awarded, and will be paid near the time that the class members will also receive their payments. Fed. R. Civ. P. 23(e)(2)(C)(iii). Fourth, there are no other agreements that would need to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv).

Finally, Rule 23(e)(2)(D) supports approval because the Settlement treats class members equitably relative to each other by permitting Class Members with out-of-pocket losses to recover as well as Class Members who have not suffered out-of-pocket loss.

Thus, all the relevant factors support that the Court "will likely be able to" grant final approval to the Settlement because it is well within the range of a fair, reasonable, and adequate compromise.

> **B.** **The Court "will likely be able to" certify a class for purposes of judgment on the Settlement because the class meets the certification requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3).**

In deciding whether the court "will likely be able to certify" a class for purposes of entering judgment on a settlement, the Court evaluates whether the proposed class meets the four requirements of Rule 23(a) and any one of the requirements of the subsections of Rule 23(b), which in this case is subsection 23(b)(3). *See, e.g.*, *In re Pre-Filled Propane Tank Antitrust Litig.*, 2019 WL 7160380, at *3.

Under Rule 23(a), the proposed class must satisfy the four "requirements of numerosity, commonality, typicality, and fair and adequate representation." *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013).

Numerosity is satisfied if there are merely twenty or more class members. *Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971). Here, there are over 14,000 class members.

Commonality is satisfied if there is any common issue of law or fact and "is easily satisfied in most cases." *Hand v. Beach Entm't KC, LLC*, No. 4:18-CV-00668-NKL, 2020 WL 3163672, at

9

*26 (W.D. Mo. Apr. 27, 2020). Commonalty exists if the claims "depend upon a common contention" that "is capable of classwide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, all class members share the common issue of whether Defendants have liability for the Data Security Incident that exposed each class member's personal data.

Typicality just "means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). It is "fairly easily met," and "[f]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1039 (8th Cir. 2018) (internal citations omitted). Here, again, all class members, including Plaintiff, share the common grievance that Defendants failed to protect their personal information, which resulted in the Data Security Incident.

"The adequacy requirement is met where: '1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and 2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge.'" *Hand*, 2020 WL 3163672, at *28 (quoting *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004)). Here, Plaintiff and counsel have vigorously and competently prosecuted the action to obtain a substantial recovery. And Plaintiff's interests—obtaining the most from Defendants—is aligned with the interests of the class members in obtaining the largest possible recovery.

Finally, the requirements of Rule 23(b)(3) are satisfied if "the court finds that the questions

of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." These requirements are "relaxed in the settlement context." *Hand*, 2020 WL 3163672, at *30. Predominance is satisfied "if the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 374–75 (8th Cir. 2018) (quotation and citation omitted). The test is not whether any individual issues exist but is simply whether one or more of the central issues in the case is common to the class. *Id.* (citation omitted).

Here, again, all class members share the common issue of whether Defendants have liability for the Data Security Incident that exposed each class member's personal data. That issue predominates over all others. And a single class action is the superior way of resolving that issue, rather than requiring thousands of individual suits that all relate to the same issue of Defendant's data security.

Thus, the Court "will likely be able to" certify the class for purposes of entering judgment on the Settlement, satisfying the second requirement for preliminary approval.

**II.     The Court should approve and direct notice to the class, set deadlines for class members to opt-out or object, and set a date for a final approval hearing.**

Upon the granting of preliminary approval, the court "must direct notice in a reasonable manner to all class members" to inform them of the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice may be given by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state in plain, easily understood language:

    (i)     the nature of the action;
    (ii)    the definition of the class certified;
    (iii)   the class claims, issues, or defenses;
    (iv)    that a class member may enter an appearance through an attorney if the member

11

    so desires;
(v)  that the court will exclude from the class any member who requests exclusion;
(vi)  the time and manner for requesting exclusion; and
(vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). After the time for objections and opt-out requests has passed, the Court then holds a hearing to consider whether to grant final approval, taking into account any objections raised by class members and all other relevant factors. Fed. R. Civ. P. 23(e)(2).

  As part of the preliminary approval order, the Court should, therefore, also approve the proposed forms and manner of notice set forth in the Settlement. The notice constitutes the "best practicable notice" under the circumstances and is direct notice to each class member individually. The long form of notice is based off of plain-English forms adopted by the Federal Judicial Center and informs the class members of all the required information under Federal Rule of Civil Procedure 23(c)(2)(B), including (i) the nature of the action; (ii) the classes; (iii) the class claims; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). The Settlement Administrator will provide the notice and report to Class Counsel who will in turn report to the Court on the effectiveness of the notice plan. The notice also provides for the Court to schedule a final approval hearing after class members have had a chance to opt-out of, object to, or remain part of the Settlement. The parties believe that such a hearing should be scheduled approximately 120 days after the entry of the preliminary approval order to allow sufficient time for the notice and response deadlines to pass.

## CONCLUSION

  The Court should enter the proposed Preliminary Approval Order and should schedule a final approval hearing for approximately 120 days thereafter.

Dated: January 9, 2025                           Respectfully Submitted,

/s/ John F. Garvey
**STRANCH, JENNINGS & GARVEY, PLLC**
John F. Garvey, #35879 (MO)
Colleen Garvey, #72809
Ellen A. Thomas, #73043
701 Market Street, Suite 1510
St. Louis, MO 63101
(314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com
ethomas@stranchlaw.com

**STRANCH, JENNINGS & GARVEY, PLLC**
J. Gerard Stranch, IV (*pro hac vice*)
Grayson Wells (MO 039658)
223 Rosa L. Parks Avenue, Ste. 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com

**COHEN & MALAD, LLP**
Lynn A. Toops*
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com

**STRAUSS BORRELLI PLLC**
Samuel J. Strauss*
Raina Borrelli*
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
(872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

\* *Pro Hac Vice Forthcoming*

***Attorneys for Plaintiff and the Class***

13

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record via the Court's CM/ECF electronic filing system this 9th day of January 2025.

*/s/ John F. Garvey*
John F. Garvey, #35879 (MO)
